STEPHEN T. KAM (Cal. Bar No. 327576)
Email:  kams@sec.gov
SARA D. KALIN (Cal. Bar No. 212156)
Email:  kalins@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission

Joseph G. Sansone, Chief (Market Abuse Unit)
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004-2616

Douglas M. Miller, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>GABRIEL REBEIZ,<br><br>Defendant. | Case No. '25CV0124 BAS KSC<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## SUMMARY

1.    This case involves insider trading by Defendant Gabriel Rebeiz ("Rebeiz" or "Defendant") in the securities of Resonant Inc. ("Resonant").  Rebeiz, a technology consultant who served on Resonant's Technical Advisory Committee (the "TAC"), traded on material non-public information in advance of a February 14, 2022 public announcement (the "Announcement") that a subsidiary of Murata

1

Manufacturing Ltd. ("Murata") would acquire Resonant (the "Acquisition").

2. Specifically, due to his role on the TAC, Rebeiz had access to proprietary information relating to the quality of Resonant's technology, which led him to encourage management to sell the company. In addition, a few weeks before the Announcement, he spoke with a senior Resonant executive ("Resonant Executive"), who made a statement to Rebeiz suggesting that there was an impending acquisition. The day after Rebeiz received this material non-public information, he began purchasing Resonant shares.

3. As a result of the Announcement in February 2022, Resonant's stock price rose 257%, resulting in $360,673 in illegal trading profits for Rebeiz.

4. By engaging in the conduct alleged in this complaint, Defendant violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated under the Exchange Act, 17 C.F.R. § 240.10b-5. The SEC seeks a permanent injunction, disgorgement of all ill-gotten gains, a civil penalty, and an officer and director bar against Rebeiz.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(d)(3)(A), 21A and 27(a) of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u-1 & 78aa.

6. Defendant, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

7. Venue is proper in this district pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because Rebeiz resides in this district.

## THE DEFENDANT

8.    **Gabriel Rebeiz**, age 60, resides in La Jolla, California.  Rebeiz is an electrical engineering professor at the University of California, San Diego, and has been a consultant to several public companies that produce radio frequency filters. He also co-founded Extreme Waves, LLC, a private entity in the radio frequency industry.

## RELEVANT ENTITIES AND INDIVIDUALS

9.    **Resonant Inc.** was a Delaware company headquartered in Goleta, California, until March 25, 2022, when it was acquired by a Murata subsidiary. Resonant was founded in 2012, and designed radio frequency filters used by mobile handset and wireless devices.  In 2014, it became an SEC-reporting company quoted on the NASDAQ Stock Market under the symbol "RESN," and had shares registered pursuant to Section 12(b) of the Exchange Act.

10.    **Murata Manufacturing Co. Ltd.**, a Japanese company with its principal place of business in Kyoto, Japan, is a global leader in radio frequency modules and filters.  Murata's shares trade on the Tokyo Stock Exchange and the Singapore Exchange.  Murata is not an SEC-reporting company.  Its shares and ADRs trade on OTC Markets Group.

11.    **Resonant Executive** was a senior executive at Resonant from approximately 2019-2022.

## THE ALLEGATIONS

**A.    Rebeiz's Role at Resonant**

12.    Resonant's business involves designing and helping customers design radio frequency filters for mobile and wireless devices.

13.    In early 2021, Resonant formed the TAC with the goal of having outside persons assess its technology and provide feedback.

14.    Rebeiz is an electrical engineer in the field of radio frequency filters who joined the TAC on or about February 9, 2021.

3

15. As part of joining the committee, Rebeiz signed an offer letter agreeing that he would not exploit the company's nonpublic information for his own benefit (the "Offer Letter").

16. By signing the Offer Letter, Rebeiz understood that he was considered an insider who was not allowed to trade on inside information.

**B.     Rebeiz Learns Proprietary Information About Resonant Technology**

17. Prior to joining the TAC, Rebeiz did not know the quality of Resonant's technology.

18. Upon attending his first TAC meeting in March 2021, where he had access to technical data that was not available to the public, Rebeiz learned confidential and proprietary information regarding Resonant's technology.

19. Following this March 2021 meeting, Rebeiz told Resonant executives that he was impressed with the technology and encouraged Resonant executives to sell the company to Murata or another large competitor based on the quality of Resonant's technology and its stage of development.

20. During an October 2021 TAC meeting, Rebeiz learned updated proprietary information about Resonant's technology, including its performance in certain tests, and its positive performance compared to the technology of competitor companies.  After the meeting, Rebeiz reiterated to Resonant executives that Resonant's technology was mature and encouraged them to sell the company to a larger company.

**C.     Resonant's Merger Discussions**

21. Between October 2021 and February 2022, Resonant began seriously exploring the idea of selling itself to another company.

22. Resonant Executive was involved in this process, but Rebeiz was not.

**D.     Rebeiz's Receipt of Material Non-Public Information and Trading in Advance of the Announcement**

23. On January 19, 2022, the TAC met for the last time.  During the

meeting, Resonant executives told members of the committee that the company no longer needed input from the TAC on its current technology.

24. At the meeting, Rebeiz told Resonant executives that Murata should buy Resonant.

25. About two hours after the meeting, Rebeiz called Resonant Executive for the first time in a month. During their call, Rebeiz repeated his opinion that Resonant should sell itself.

26. In response, Resonant Executive indicated to Rebeiz that "something is going to happen," suggesting that Resonant was, in fact, on the verge of selling itself.

27. On January 20, 2022 – the day after the last TAC meeting and his discussion with Resonant Executive – Rebeiz purchased 60,000 shares of Resonant stock at $1.42 per share, worth $85,200, in breach of the duty he owed Resonant as a member of the TAC and in breach of the Offer Letter he signed.

28. Prior to purchasing Resonant stock on January 20, 2022, Rebeiz had not purchased or sold any security since July 2020. He had not even accessed his brokerage account since September 2021.

29. The next day, Rebeiz purchased an additional 30,000 shares at $1.30 per share worth $39,000, in breach of the duty he owed Resonant as a member of the TAC and in breach of the Offer Letter he signed.

30. On February 4, 2022, Rebeiz purchased another 30,000 shares at an average price of $1.40 per share, worth $41,927, in breach of the duty he owed Resonant as a member of the TAC and in breach of the Offer Letter he signed.

31. In total, Rebeiz purchased 120,000 shares for $166,127.

32. On February 14, 2022, Resonant announced that it was being acquired by a subsidiary of Murata.

33. After the Announcement, Resonant's stock price closed at $4.39 per share – a 257% increase resulting in Rebeiz generating trading profits of $360,673.

**E.      Rebeiz Acted With Scienter**

34.      Rebeiz acted with scienter when he traded Resonant securities on the basis of material non-public information.

35.      Rebeiz knew or was reckless in not knowing that he was subject to the terms of the Offer Letter, which prohibited him from exploiting Resonant's confidential information for his own benefit.

36.      Rebeiz knew or was reckless in not knowing that he owed a duty to Resonant.

37.      Rebeiz knew or was reckless in not knowing that the information he received in his role on the TAC regarding Resonant's technological capabilities, product maturity, that the TAC would no longer be assessing Resonant's current technology, and Resonant Executive's response to his comment about Resonant selling itself was material non-public information.

38.      Rebeiz knew or was reckless in not knowing that he breached his duty to Resonant by purchasing Resonant shares while aware of and on the basis of this material non-public information.

**<u>FIRST CLAIM FOR RELIEF</u>**

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

39.      The SEC realleges and incorporates by reference paragraphs 1 through 38 above.

40.      By engaging in the conduct described above, Defendant Rebeiz, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or

6

courses of business which operated or would operate as a fraud or deceit upon other persons.

41. By engaging in the conduct described above, Defendant Rebeiz violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## **PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court:

### **I.**

Issue findings of fact and conclusions of law that Defendant committed the alleged violations.

### **II.**

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure permanently enjoining Defendant Rebeiz and his officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### **III.**

Order Defendant Rebeiz to disgorge all funds received from his illegal conduct, together with prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7), 15 U.S.C. §§ 78u(d)(5), 78u(d)(7).

### **IV.**

Order Defendant Rebeiz to pay a civil penalty under Section 21A of the Exchange Act, 15 U.S.C. § 78u-1.

### **V.**

Enter an order against Defendant Rebeiz pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), prohibiting him from acting as an officer or

director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 78 U.S.C. § 78o(d).

## VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VII.

Grant such other and further relief as this Court may determine to be just and necessary.


Dated:  January 21, 2025

*/s/ Stephen Kam*

Stephen Kam
Sara D. Kalin
Attorneys for Plaintiff
Securities and Exchange Commission

8